Good morning. Welcome to the Fourth Circuit Court of Appeals. You might notice there is not a judge sitting in this seat, Judge Rushing's seat, but she is truly with us. That is true, Judge Rushing? It is good to see you, Judge Rushing. So she will be with us virtually, but that does not mean any less than she will be here in person. You will probably find that out shortly. And to my left is Judge Lewis, sitting by designation as a district court judge in South Carolina. We will proceed with three cases today, and we will start with the first case, United States v. Oscar Pliego-Pineda, and we will hear from the defendants' counsel. Thank you, Your Honors, and may it please the court, my name is Seth Neihart. I represented Mr. Oscar Pliego-Pineda in the district court, and I am here today to argue about an appeal that is mostly revolving about a discrete issue, and that has to do with the interpretation of the leadership enhancement under United States Sensing Guide Section 3B1.1b. And that is an enhancement for individuals who act or serve as a manager or supervisor in a group of five or more defendants. And in here, it's not an issue as to the number of defendants. It was five or more. The question is whether or not my client, Mr. Pliego-Pineda's actions really rose to the level of being a manager or supervisor. The government, in one of its headings, describes Mr. Pliego as a lynchpin in some of these particular transactions, but that's just not the same as being a leader or a manager. Let me just address something that I don't think either one of you really got into, but it seems to be at least something that we have to look at. You've got the Kaiser case, the Kaiser v. Wilkie case, and you've got the United States v. Campbell. And the question we've been struggling with in that case is, how do we approach these guideline cases? Peers, at least under those cases, we have to first consider whether this guideline is ambiguous. If it's not, we go with it. If it is, then we can look at the commentary. Is that the way you look at this? And tell me why. Why is it you did not at least, or maybe you just assumed we were going to go that way or how are we going to go with it? I mean, let me just make it clear. It's become somewhat uncertain as to how to treat those guidelines and treat the commentary. If you look at the commentary, you sometimes can get clarity to it, but then along came Kaiser, and then there's Campbell in terms of how we deal with those cases. And the question is, are we both on, are you on the same board? The first thing you have to do is determine whether that guideline is ambiguous insofar as the meaning of leadership. And if it is, then there's a commentary that you can look at. That's what I'm asking. Did you consider that at all? I hadn't really worked through that analysis, to be frank, Your Honor. Do you see how it can impact you? Because if the leadership that you want to argue about in the guidelines is ambiguous, you go to the commentary. But you may be assuming you can just look at the commentary anyway. And I'm not sure my colleagues agree with that, but at least it appears from those cases, we have to first determine, is the guideline ambiguous? Well, Your Honor, I frankly don't think that manager or supervisor, as understood in the English language, is particularly ambiguous. Well, that's not the question. The question is whether under the guideline it's ambiguous. If it's not, then you're stuck with whatever the guideline says, whatever it may be. If it is, you can look at the commentary. And I'll tell you why. You look at that commentary, which is Application Note 2, it basically says a leader has to be a one participant. It actually looks like to me, help you. But you don't get there if that guideline is unambiguous. Right. Just think about it as when you go back and, you know, you might want to take some extra time to go back and think about it and proceed. I don't know where you're going with your argument here other than to talk about the role of a leader and the way the cases have interpreted it. And you know that I think we're pretty much on that, but I'll leave it to my colleagues to ask questions regarding that. Well, I would note that there is controlling authority for the court, I think, that does base a lot of its analysis on those guidelines, on this particular guideline. So, I mean, I think you'd also have to take that into account with respect to... What's the case you're talking about? The chief case, I would argue, is the line of cases ended up with U.S. versus Bernie that's cited, I believe, in both briefs. And there's several cases before that, particularly United States versus Slade and Chambers that I would contend those cases stand for the proposition that, you know, the seven factors of the guidelines, is missing, you know, a number of key factors. What about Botley? Botley we held that someone who coordinated the activities of others, that alone is sufficient to warrant the enhancement. When you are in charge of the activities of the other, I would concede that that warrants enhancement. I made a number of arguments as to why that's factually not the case here for Mr. Pliego. He essentially acted... Was he not the Atlanta guy? He... I mean, he was the head of that hub. No, I would... No, I don't believe that's a fair characterization, Your Honor. Because he was essentially acting as a salesman trying to make a commission. He referred to himself as a middleman where he would, like, say an insurance salesman acting legitimately, he'd be trying to... He was arranging... Coordinating business between the two separate entities. So within that organization, there's no evidence of him actually acting as a manager or leader, supervising anyone per se where there's a chain of command and he's a supervisor. So if an insurance agent is just working with a company and a client, he's not managing or supervising anyone. But if he hired some staff to help him with his insurance agency, it's at that point where he controls the actions of others... But, sir, doesn't he have people under him that have to be carrying out his instructions? No, ma'am. He does not in this record. Well, how do they... Who tells them where to pick up the drugs and how much to pay for them? Well, it's back and forth. He's the middleman. He's talking to the selling cartel. He's talking to the undercovers. He's relaying information instructions back and forth. But it's not his guys that go and do something. It's another defendant in this case, also with the name of Pineda, but there's no relation. They are not... He talks about having his guys, the other Maldonado Pineda, but Oscar has no guys to send anywhere. He doesn't have people where... As in a number of cases that upheld this guideline enhancement, he doesn't have his own people that he says, okay, now you go here, take the drugs there, and he might relay instructions back and forth from the cartel to the potential buyer. But there's no evidence of him actually having any managing or supervising authority that's in the actual organization itself. Counsel? Yes, ma'am. I thought a lot of the evidence for supervising or managing here was circumstantial, so you might be right. There didn't appear to be a lot of direct evidence about the chain of command and who were who. But district court and all of our conference said when your client negotiated a deal and said, we're going to do it a certain way for a certain price, he negotiated whether money had to be paid up front or not, and then someone else executed. Right? Your client literally liquidated the drugs. He wasn't the one who... He told someone, I'll send someone to tell you how to reduce the scope into drugs, and then other people carried that out. And the district court concluded that, by our conference, that indicated your client was above these other people in the chain somehow, even without direct evidence. So why is that clear error? Because there's no... There's no evidence of what's actually behind the scenes and going on. Do you realize that the district court complied on not direct evidence, right, but district court concluded that all the facts and made a conjecture about what was going on behind the scenes? Your Honor, I did have a significant discussion of what that circumstantial was or was not. So to the extent that she relied on circumstantial evidence in this record, I would contend that she did so erroneously. And I believe my time's up, Your Honor. All right, you've got some time to rebuttal. We'll hear from the government's counsel. Thank you, Your Honor. Your Honor, this court should affirm the sentence imposed by the district court because that court considered the factors, and it also made a regular determination on whether or not this defendant, Oscar Pliego-Pineda, was in fact a manager or supervisor of a group of five or more participants consistent with 3B1.1. Because of that, this court should, in fact, affirm. And when we look at the factors, and I'll point out one of the comments that Judge Rushing made related to the circumstantial evidence. As the court knows, this defendant, as the district court pointed out, was the hub. He was the center in every single one of these deals. Moreover, we're talking about a multi-state, multi-defendant, multi-kilo meth and money laundering conspiracy. We are not talking about a couple of buy-sell transactions. We are talking about a specific action that you maintain he undertook such that he demonstrated supervision or management of the situation. Your Honor, the fact that he had responsibility for what the pricing was going to be, he set the pricing based on his negotiations. Even those early meetings, and here's one of the early things that really matters, I would argue, Judge Winn. And that is, as was pointed out, he was the organization's man in Atlanta. That when the confidential source first came to try to get methamphetamine, that he was directed to this defendant as the person who was the connection, who was the person responsible out of Atlanta. And so they do a single kilo deal that this defendant directs. Doesn't that suggest that he's a middle man? And report him back to someone? He is a middle manager, I would argue. He's not a middle man. Because he has the responsibility with the group that is this organization. And as the court knows from his debrief, when he was arrested, he indicated that he was, in fact, had been working for a number of years for Orfeo Bustos-Macedo. You're saying that, at least in all kinds of places, can be a leader, and then under the leader, I guess a sub-leader or a director or something like that. Absolutely, Your Honor. And I think this court, in other cases, has said that it's not mutually exclusive. For instance, if you have, I would argue, consistent with what this case is, you've got an individual who's in Mexico doing the supplying. That individual could certainly be a leader organizer. And then this defendant, because of his responsibilities in helping the United States East Coast portion of the drug activity go forward, is a simply manager or supervisor. I want to ask you a quick question, and my colleagues probably have additional questions, but I want to go back to where I started with your colleague on the other side. Neither one of you brought up the Kaiser case or the Campbell case, which, in my opinion, could affect the outcome of this case. Both cases sort of indicating that you go first to look at the guidelines. If it is unambiguous, you stay right there. If it is ambiguous, you can look at the commentary. And the reason that sort of comes to my attention is when you look at application note number two, it defines someone who is a manager as someone who has involvement with one or more participants. And that's critical, because absent that language, it looks like the case law goes in the direction you can be coordinating activities all, but that commentary points you to a particular, he needs at least one participant. And how do you respond to that? First in terms of, you know, question of Kaiser and impact of Campbell here and the impact of the commentary on this case. Certainly, the commentary does have a tremendous impact, because obviously all the case law built around 3B1.1 deals with the commentary and says You're telling us that we should take the commentary for guidance on this? Which to me tells me if you follow the line I just said, you're basically saying there may be some ambiguity regarding what a leader or participant is in the guidelines, so the commentary is helpful. Is that your position? Well, I would argue that first, I don't believe that the guideline itself is ambiguous. It may not be, but it doesn't tell you anything. It just tells you leader, manager, there's no definition in that guideline. That's true. So that's why I ask, do you accept that the commentary would be helpful in telling us commentary is written by the same people, but we have this division here. So do you accept that? I agree that the commentary would be helpful, but let me just say this. Well, that's important. I got that. The reason I'm going there is because the district court relied to some extent that he had a relationship with this undercover agent. And it's clear from case law, an undercover agent cannot be a participant. So how do we deal with that? Right. So let me first say that as to, for instance, the leader, organizer, manager, supervisor, even though those terms are not defined, I would argue that if we just went on the guideline and didn't look at the commentary, that this defendant, because he organized every single deal, the court could say that's not ambiguous and we would go there. But you'd have to know the definition somewhere of those terms. You look at a dictionary, you get definitions, the narrow one, you got the broad one. That's the problem you could have with the guidelines. I mean, yeah, we could say, we all could say as a director or manager, but what does it mean? Right? Right. So that's why I said, do you go to the commentary? I'm not arguing. I'm just trying to understand what do we look at from your perspective? And that's the thing, because there's no question that the case law has said, even the guideline doesn't define what a manager is. It gives you things to look at, but it doesn't say, here's the definition of a manager. There's one thing that's pretty important. That is, it says that it has to be one or more participants. Right. And a participant is defined. When you look at a participant, that's a direct action. And I did point out that undercover thing, which I think you've got to address that. I mean, if the district court relied on an undercover agent, and a lawyer is an undercover agent, cannot be a participant, isn't that error? No, Your Honor, because the court, this court looks at the entire record evidence in determining whether or not there's clear error, not one specific fact. And so, in looking at the entire record, the court, this court, can certainly affirm, because there's not, if this court looks at the issue of the fact that the district court may have talked about, for instance, the fact that the undercover was in essence recruited as an accomplice. How do we know that? How do we know that when we're looking at a district court that makes that specific finding? Yeah, I agree. You can look at the totality and the whole circumstances, but we don't know that. We don't know what that district court relied upon. It was clearly, at least, if it's a participant and it's not a participant, because the case law says it's not, that's error. Right. What you're saying is, it may be, I guess, harmless, but you didn't argue harmless here already in your brief. Right. I don't get it. I mean, we don't know what the district court actually relied upon. That's something that was said. Right. Well, the fact that the court looks at, obviously, all seven factors, the fact that the... Can I ask you a question about that? Yes, Your Honor. Was the undercover the only thing the district court mentioned? I thought the court said, you know, I'm confident looking at these facts that the defendant has said, don't go and deliver drugs to this person. They wouldn't have done it, but if he said, do go, they did do it. I thought there was more than just a reference to he was also involved in recruiting as evidenced by the undercover. But you tell us. That's correct. That's absolutely right, Your Honor. When the court... Let me be specific with you. This is his language. He said an important point is that he had this relationship. That's in the record. That's an important point. Right. I'm not arguing as to whether there's not some other evidence. The only question I'm saying is to what extent did that influence the decision if it's error to have done so. That's all. I agree. There's a lot of other stuff. But when the district court says it's an important point, I can't get in the head of that district court and say that did not influence that decision. Right. And I think that goes to the nature of what was happening in the case in the sense that certainly there were other participants. Certainly there were other individuals, as Judge Rushing points out, where the district court says if he had said if this defendant had said don't do it, then we wouldn't have gone forward. And that certainly is very good evidence. I'm not in disagreement with Judge Rushing on that point, that there's other evidence on that. But tell me, if we look at the commentary, who is the participant that he is alleged to have been a manager of? We've got circumstantial evidence. We've got indirect evidence. We've got what looks to be an appearance. But who is the direct participant with the defendant that makes him a leader? Your Honor, I would argue that when these deals are done. Name the participant. I would argue that when the first deal is done with a single kilo and there's a Pineda. Who is it done with? It's provided by another Pineda on the first deal. And so I would argue that he has responsibility for that person because he sets up the deal and then that person delivers. So I would argue that, again, it's not a matter of exclusive control. He's part of an organization. And so if he had called the courier on that occasion and said we can't do this deal. I just found out something about the informant or whatever. How do we know someone else didn't order that person to deliver? We don't. We don't. That's correct. That's correct. And so that goes to the nature of an organization, Your Honor, that let me do this. Well, the district court said that. Just what we just said. It says I don't know whether he did it by himself or whether he was the only person involved. This court agreed with us on that. I don't think the court said he was by himself. I think the court pointed out. The language says the district court specific said I don't know whether Pineda was able to by himself to tell that person to deliver. Right. So that's what I'm saying. He agrees with what you just said. We don't know. So that's a problem. Well, I would argue that as the district court pointed out, there's not specific direct evidence of a specific person. But let me let me point this out, Your Honor. In J.A. 171 and 176 related to the meth soap deal and then the later liquid meth instance, that in both of those circumstances, this defendant told the C.S. I'll send someone to you to help you do the conversion. And then after that meth soap deal, immediately relationship with the C.S. wouldn't count. C.S. is a right. He's he's saying Oscar Pliego Pineda was telling the C.S. I'll send someone to you. That arguably is related to this idea of circumstantial evidence that he has direct control over somebody else. Did he send someone? No, but there was a call that was made. He didn't say I'll send someone. Because it shows that he has that ability. And then thereafter, members of the organization in Mexico. He says he has it. Doesn't show you have it because he didn't deliver it. He didn't send anybody. He got him in touch with the people in Mexico that then described how to do the conversion. That's 171. Right after he talks about being able to send someone, then immediately thereafter, this informant talks to Benjamin Malfavone, who's part of the organization. And so that's the argument, is that he, again, to ignore that he is part of an organization, is to ignore the fact that he obviously has implicit control over several members. Let me give my colleagues an opportunity to see if they have questions here, because you and I have been going back and forth, and I don't want to take, especially Judge Rushen, who has been so patient there in Asheville. Do you have any questions, Judge Rushen, further here? No. Do you, Judge? No, thank you. Okay, I think we're clear in terms of your position. Thank you, Your Honor. Mr. Nyhut, you have just a few minutes for rebuttal, if you choose to use it. Thank you, Your Honor. I'd like to address a few points that have been raised. The question of whether or not the statute's ambiguous without the commentary, my first reaction was, well, it's not ambiguous, because it means what I say, and therefore the court should rule in my favor, just on the basis of length. I'm probably going to lose if that's the state. I'm going to take that right now. Case law then would inform it, and then case law is not going to. You heard the question of Judge Rushen. She's on point, and that case law is going there. If you don't get that commentary, I think you've got a problem, at least in my opinion. So that's probably not a good answer for you right now. Right, like I said, that's my initial reaction. However, the fact that there have been a lot of cases about what a manager and leadership entail in the court's jurisprudence and in other circuits' jurisprudence would suggest that there is an ambiguity and that the commentary is helpful in guiding district courts as to how this section should be implied. Yes, ma'am. I agree with Judge Wynn that the commentary helps you, and I wonder if you might ask who has the burden to suggest that we shouldn't follow the commentary here, and have they made that argument? I haven't heard an argument today or in the briefing by any party that the commentary should not be applied. It's my position that it should be applied. From the case law, it frankly didn't seem like there was a question. I mean, the case law based on the specific enhancement, it didn't seem from those cases that I was reading that there was a question. It just, everybody applied it, and they have talked quite a bit on how it's applied. So I would contend that... You know, that question is going to whether or not there's waiver or whether or not we should even get there because you didn't bring it up. Right. And you probably ought to focus on the fact, that's why I said had you read Kaiser, the United States Supreme Court case or our case of Campbell, if it's the law, it's just the law. That's all it is. I mean, the law would be that's how we look at this in terms of using the sentencing guideline. I don't know if you need a briefing or not. If it's the law, that's how we look at it. Because we've got to have some method by which we can analyze this question. Right. And if we do that and say it's ambiguous or unambiguous, if it's ambiguous, then we go to commentary. As Judge Rushing indicated, I don't mean to say anything that sets the case, that might be helpful to you, certainly more helpful in my view than the guideline by itself. Right. And so I would argue that there is an ambiguity with respect to whether or not a leadership or management absolutely requires that you have clear and direct control over someone. Or if there's another indirect way someone can become a leader or supervisor within an organization. I believe there's been a lot of cases that have, you know, come to this question in the court's jurisprudence. And so I would contend on that basis that there is an ambiguity that the court should find that and that the guidelines and the court's jurisprudence about the commentary and the guidelines and specifically the seven factors is something that the court should reach in interpreting the leadership enhancement. Thank you so much, Mr. Nygaard. I'll ask the judges, do you have any further questions? Judge Rushing? Judge Lewis? No, thank you. Thank you. And we'll note that you are court appointed, which is an important aspect of what we do here. You are someone who's taken a case up that otherwise we needed someone appointed. You stepped in. And thank you for your service to this court. It would be very difficult to do these cases without having lawyers to represent these unrepresented individuals. And I also will point out that the government's counsel, Ms. Galen, you ably represented the government today. The court's going to come down. We will come down and greet counsel, and Judge Rushing will virtually greet you from the screen with a wave, and then we'll proceed on to the second case.
judges: James Andrew Wynn, Allison J. Rushing, Mary G. Lewis